**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JSMN SHENANGO VALLEY MALL LLC, | Civil Action No. 17-cv-9994 (KBF) |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | |
| PARADIGM CREDIT CORPORATION, DAVID KUSHNER, IOWA SQUARE REALTY LLC, NAMDAR REALTY GROUP, IGAL NAMDAR Defendant. | |

**COMPLAINT**

Plaintiff, JSMN Shenango Valley Mall LLC, a New Jersey limited liability company, files this Amended Complaint against the Defendant, Paradigm Credit Corporation, , David Kushner, Iowa Square Realty LLC, Namdar Realty gal Nadmar, and as follows:

**PARTIES**

1. Plaintiff is a New Jersey limited liability company with offices and a place of business located at 280 Idaho Street, Paramus, New Jersey 07652.

2. Defendant, Paradigm Credit Corporation, is a New York corporation with its principal office located at 380 Lexington Avenue, Suite 2020, New York, New York 10168.

3. David Kushner is CEO of defendant Paradigm Credit Corporation. Having its principal office located at 380 Lexington Avenue, Suite 2020, New York, New York 10168.

4. Iowa Square Realty LLC is a New York Corporation with its principle office located at 150 Great Neck Road, Suite 304 Great Neck, NY 11021.

1

5.	Namdar Realty Group is a New York Corporation with its principle office located at 150 Great Neck Road, Suite 304 Great Neck, NY 1102.

6.	Igal Namdar is the principle officer of Iowa Square Realty, and Namdar Realty Group, located at 150 Great Neck Road, Suite 304 Great Neck, NY 11021

**JURISDICTION AND VENUE**

7.	Plaintiff is a citizen of New Jersey.

8.	All Defendants are citizens of New York.

9.	This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

10.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant resides in this judicial district and a substantial part of the events giving rise to this claim took place in this judicial district.

**FACTS**

11.	On or about June 29, 2012, Defendant provided Plaintiff with a loan in the principal amount of $3,250,000 with the Defendant (the "Loan").

12.	The Loan is evidenced by a Mortgage Note dated June 29, 2012 (the "Note") in the amount $3,250,000, a true and correct copy of which is attached hereto as Exhibit A.  The Note and various related loan documents are collectively referred to as the "Loan Documents."

13.	The Loan was secured, in part, by a first mortgage on real property (the "Mortgage") consisting of a retail mall located at 3303 East State Street, Hermitage, Pennsylvania 16148 (the "Shenango Valley Mall").  A true and correct copy of the Mortgage is attached as Exhibit B.

14. Pursuant to the terms of the Note, the "Maturity Date" of the Loan was scheduled to occur on June 30, 2013. Exhibit A at ¶ 2.1(c).

15. As a result of a national decline in the mall and shopping center industry, Plaintiff suffered financial distress and was not able to pay off the Loan on or before the Maturity Date.

16. As a result of this financial distress, after the Maturity Date occurred, Plaintiff began to solicit offers from prospective purchasers for the sale of the Shenango Valley Mall.

17. The Defendant had actual knowledge that Plaintiff was actively seeking a buyer for the Shenango Valley Mall.

18. During September and October 2014, Plaintiff began negotiations with Namdar Realty Group ("Namdar") for the sale of the Shenango Valley Mall.

19. Igal Namdar, the principal of Namdar, also owns and controls an entity known as Iowa Square Realty LLC ("Iowa Square").

20. Upon information and belief, Igal Namdar holds exclusive ownership, management and control over both Namdar and Iowa Square.

21. Defendant, with actual knowledge of Plaintiff's inability to pay off or refinance the Loan and Plaintiff's desire to sell the Shenango Valley Mall, required Plaintiff to execute a burdensome Loan Extension Agreement of only one month. A true and correct copy of the Loan Extension Agreement is attached hereto as Exhibit C ("Paradigm Extension").

22. Plaintiff and Defendant executed the Paradigm Extension on or about September 30, 2014. *See* Exhibit C.

23. Upon information and belief, Defendant had actual knowledge of Plaintiff's attempts at trying to refinance the Loan or negotiate a sale of the Shenango Valley Mall with prospective buyers prior to presenting Plaintiff with the Paradigm Extension.

24. Pursuant to the terms of the Paradigm Extension, the interest rate on the Loan was increased from 13% per annum to 14% per annum. Exhibit B at ¶ 2(b)

25. The Paradigm Extension also required Plaintiff to pay a $25,000 loan extension fee for a one month extension. Exhibit B at ¶ 3.

26. Upon information and belief, at the time that Plaintiff and Defendant executed the Paradigm Extension, Defendant was keenly aware of the difficulty Plaintiff would have in refinancing the Loan or selling the Shenango Valley Mall and made a decision to, if necessary, interfere with Plaintiff's attempt to sell the Shenango Valley Mall to any prospective buyer by using its relationship of Plaintiff's lender to obtain the identity of the purchaser and then contact the purchaser in an effort to convince the buyer to purchase the Loan and Loan Documents for a lesser amount than the sale price associated with the purchase of the Shenango Valley Mall.

27. Upon information and belief, Defendant demanded that Plaintiff agree to the burdensome terms of the Paradigm Extension for the purpose of squeezing Plaintiff for additional extension payment before Plaintiff sold the Shenango Valley Mall, or before Defendant sold the Loan and Loan Documents.

28. On or about October 8, 2014, Plaintiff and Namdar executed an Agreement of Sale for the Shenango Valley Mall, a true and correct copy of which is attached hereto as Exhibit D.

29. The sale price for the Shenango Valley Mall ($6,550,000) would have been sufficient for Plaintiff to pay off its obligations under the Loan and to earn a profit of approximately $3,250,000. *See* Exhibit D.

30. During the due diligence period under the Agreement of Sale, Defendant, in its capacity as Plaintiff's lender and as the holder of the first mortgage on the Shenango Valley

4

Mall, demanded that Plaintiff provide a copy of the Agreement of Sale between the Plaintiff and Namdar.

31. On or about October 22, 2014, in response to Defendant's demands for the Agreement of Sale, Plaintiff requested that its real estate broker provide a copy of the Agreement of Sale to the Defendant. At that time, Plaintiff also directed Defendant in writing to not contact Namdar.

32. Plaintiff instructed its real estate broker to provide a copy the Agreement of Sale to Defendant only because Defendant was Plaintiff's lender and Defendant was exerting significant pressure on Plaintiff to pay the Loan off or else Defendant was going to take legal action against Plaintiff.

33. Upon information and belief, Defendant intentionally ignored Plaintiff's direction to refrain from contacting Namdar, since Defendant wanted to sell the Loan and Loan Documents to Namdar or any other potential purchaser of the Mortgaged Property.

34. Upon information and belief, Defendant having actual knowledge of Plaintiff's inability to refinance the Loan or otherwise satisfy its obligations under the Loan or the Paradigm Extension, disclosed Plaintiff's financial status to Defendant in order to thwart Plaintiff's attempts to sell its interest in the Shenango Valley Mall to satisfy its obligations to the Defendant.

35. With actual knowledge of Plaintiff's inability to refinance or otherwise satisfy its obligations under the Loan or the Paradigm Extension, Defendant interfered with Plaintiff's negotiations with Namdar so that it could convince Igal Namdar to purchase the Loan and Loan Documents, rather than the Shenango Valley Mall.

36. Upon information and belief, Defendant disclosed to Igal Namdar the terms of the Loan and the Paradigm Extension.

37. Defendant successfully convinced Namdar to purchase the Loan and Loan Documents thus intentionally thwarting Plaintiff's attempt to sell the Shenango Valley Mall to Namdar.

38. On or about November 12, 2014, Namdar, through its counsel, provided a letter to Plaintiff terminating the Agreement of Sale without further explanation, a true and correct copy of which is attached hereto as Exhibit E.

39. Upon information and belief, Iowa Square and Defendant closed on a deal for the sale of the Loan and Loan Documents and the mortgage interests in the Shenango Valley Mall to Iowa Square on December 31, 2014.

40. In early January 2015, Plaintiff was contacted by Iowa Square with respect to Plaintiff's need for an extension of the Maturity Date. This communication by Iowa Square was the first time that Plaintiff learned that the Defendant had sold the Loan and Loan Documents regarding the Shenango Valley Mall and assigned its rights to Iowa Square.

41. Defendant never disclosed to Plaintiff that it was engaging in negotiations with Iowa Square for the sale the Loan and Loan Documents regarding the Shenango Valley Mall.

42. On or about January 5, 2015, within days of Plaintiff learning that Defendant had sold the Loan and Loan Documents to Iowa Square, Iowa Square, having actual knowledge of the decline in the mall and shopping center industry and Plaintiff's financial distress, required Plaintiff, in order to avoid foreclosure and/or other legal proceedings to execute a second even more burdensome Loan Extension Agreement, a true and correct copy of which is attached hereto as Exhibit F ("First Iowa Extension").

43. Pursuant to the terms of the First Iowa Extension, Plaintiff was required to pay $50,000 per month in loan extension fees, $1,000 per day in late fees, and a prepayment penalty calculated on a sliding scale beginning at $500,000, and decreasing by $100,000 per month. *See* Exhibit F.

44. Between June 2015 and January 2017, Plaintiff was forced to enter into four additional Loan Extension Agreements with almost identical terms and conditions as the First Iowa Extension with Iowa Square on June 30, 2015, January 2016, July, 2016, and January 1, 2017.

45. Since the First Iowa Extension, Plaintiff has paid to Iowa Square an amount in excess of $2,000,000.00 in Extension Fees, Prepayment Penalties, Late Fees, increased interest expense, etc., leaving a balance still owed according to Iowa Square of a sum in excess of $3,191,000.00.

46. Since Defendant caused Namdar to terminate the Agreement of Sale on November 2014, Plaintiff has actively and desperately attempted to find a new prospective purchaser for the Shenango Valley Mall, or an investor/lender willing to refinance the Loan. However, Plaintiff's efforts have been predictably unsuccessful.

47. Ultimately, Iowa Square has alleged that Plaintiff defaulted on its obligations under the Loan and the six separate Loan Extension Agreements.

48. On April 18, 2017, Iowa Square filed a Complaint in Mortgage Foreclosure against Plaintiff seeking a money judgment in an amount in excess of $3,191,000.00 despite Plaintiff's payments under the Loan of interest payments in the amount of $2,000.000.00, payments in excess of $1,000,000.00 with loan extension fees and payments of late charges and pre-payment fees from sales proceeds from the sale of two shopping centers and other payments

in a total amount in excess of $1,000.000.00.  That matter is currently pending in the United States District Court for the Western District of Pennsylvania at *Iowa Square Realty LLC v. JSMN Shenango Valley Mall LLC*, 2:17-cv-00497-CRE.

49. On July 13, 2017, Iowa Square filed a Complaint against the individual Guarantors of the Loan.  That matter was originally filed in the United States District Court for the Western District of Pennsylvania at *Iowa Square Realty LLC v. Ravinder Thota and Yashodhara Devi Thota*, 2:17-cv-00926-CRE.

50. On December 18, 2017, upon a joint motion by the parties, the action on the Guarantees was transferred to the United States District Court for the Southern District of New York.

## COUNT I

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

51. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 46 of this Complaint as if set forth at length herein.

52. Defendant requested that Plaintiff provide a copy of the Agreement of Sale with Namdar for the sole purpose of interfering with the negotiations between Plaintiff and Namdar.

53. Defendant intentionally misrepresented to Plaintiff that it required the Agreement of Sale in its capacity as the lender and mortgage holder when the reason for the request was to interfere with Plaintiff's prospective business opportunity and sell its Loan and Loan Documents to the purchaser.

54. At the time that Defendant demanded a copy of the Agreement of Sale, it did not disclose that its true purpose for requesting the Agreement of Sale was to learn the identity of the potential purchaser in order to interfere with Plaintiff's prospective business opportunity.

8

55. Furthermore, Defendant did not disclose that its true purpose for requesting the Agreement of Sale was to sabotage Plaintiff's deal and negotiate its own deal for the sale of its Loan and Loan Documents and interest in the Shenango Valley Mall.

56. But for its contractual relationship with Plaintiff, the Defendant would not have been entitled to obtain a copy of the Agreement of Sale from the Plaintiff.

57. Thus, using false pretenses, Defendant leveraged its position of privity to compete with the Plaintiff through unlawful and unfair means.

58. Defendant disclosed to Namdar Plaintiff's financial condition and the terms of the Loan Documents and the Paradigm Extension in order to thwart the Plaintiff's attempts to sell the Shenango Valley Mall.

59. Defendant disclosed to Namdar Plaintiff's financial condition and the terms of the Loan Documents and the Paradigm Extension in order to convince Namdar to terminate the Agreement of Sale and purchase, through Iowa Square, the Defendant's Loan and Loan Documents, rather than the Shenango Valley Mall.

60. As a direct result of Defendant's unlawful and tortious conduct, Plaintiff was deprived of the prospective benefit of its business opportunity with Namdar.

61. As a direct result of Defendant's unlawful and tortious conduct, Plaintiff has not been able to sell the Shenango Valley Mall or refinance the Loan.

62. As a direct result of Defendant's unlawful and tortious conduct, Plaintiff has been forced to pay significant sums of money in extension fees, increased interest payments, late charges and pre-payment penalties in an amount in excess at $2,000,000.00 leaving an alleged balance due under the Loan according to Iowa Square of a sum in excess of $3,250,000.00 pursuant to six separate Loan Extension Agreements.

63.     As a direct result of Defendant's unlawful and tortious conduct, Plaintiff has defaulted on its obligations under the Loan and the Loan Extension Agreements.

64.     Defendant's conduct was knowingly unjustified.

65.     As a direct result of Defendant's intentional misconduct, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT II

## BREACH OF CONTRACT

66.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1through 65 of this Complaint as if set forth at length herein.

67.     Plaintiff believes that after obtaining copy of the contract between JSMN and Namdar Realty defendant Paradigm approached and induced defendant Namdar to obtain assignment of loan documents including assignment of mortgage directly from defendant Paradigm resulting into cancelation of duly executed contract between JSMN and Namdar Realty apparently for no real reason.

68.     Defendant Paradigm's actual tortuous interference was the direct and proximate cause for defendant Namdar to breach its contract with the plaintiff.  Defendant Paradigm knowingly and intentionally interfered with the contract that resulted into breach of contract by Namdar.

69.     As a direct result of defendant's breach of contract and tortuous interference, plaintiff has suffered damages in the amount to be determined at trial.

10

## COUNT III

## FRAUD AND CONSPIRACY

70. Plaintiff incorporates by reference the allegations set forth in paragraphs 1through 69 of this Complaint as if set forth at length herein

71. Defendant Paradigm pressured plaintiff to provide copy of the agreement of Sale between JSMN and Namdar with intent to defraud plaintiff.

72. Plaintiff provided copy of the agreement to defendant Paradigm with instructions in writing to not contact defendant Namdar. Defendant Paradigm had a duty to keep the information confidential and to itself. Defendant breached its duty of confidentiality and contacted defendant Namdar upon obtaining the information details of Namdar Realty Group. In doing so defendant Paradigm conducted itself in fraudulent manner to violate a confidence or to injure private interest which the law deems worthy of protection.

73. Since the corporations are non- juristic person, the Principles of the defendant corporation's; David Kushner and Igal Namdar, entered into a civil conspiracy to commit fraud against plaintiff JSMN. Defendant Kushner and Namdar were both fully aware of the contract between JSMN and Namdar Realty Group for sale/purchase of the JSMN (the "Shenango Valley Mall").

74. Defendant Kushner and Namdar had a common objective to conduct the transaction directly, and purposely by passing plaintiff JSMN.

75. Defendant Kushner and Namdar acted in furtherance of the objective to conduct the transaction directly and conspired to terminate the contract of sale purchase between JSMN and Namdar Realty Group.

76. While defendant Kushner obtained the contract for sale purchase from plaintiff JSMN, defendant Kushner had definite knowledge of fraud. When defendant Namdar terminated the sale purchase agreement, Namdar had specific knowledge of committing fraud by terminating the agreement for no reason and obtaining mortgage and loan directly from defendant Paradigm.

77. As a direct result of defendant's Constructive Fraud, and Conspiracy plaintiff has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a) Awarding compensatory damages in favor of Plaintiff for all damages sustained as a result of Defendant's wrongdoing in an amount to be proven at trial, including interest thereon;

b) Awarding punitive damages in favor of Plaintiff in an amount to be determined at trial as a result of the Defendant's intentional and tortuous misconduct;

c) Awarding Plaintiff its reasonable costs and expenses incurred in this action, including but not limited to reasonable attorneys' fees, interest, costs, and disbursements; and

d) Awarding such other relief as the Court deems just and proper.

New York, NY

April 25, 2018

                                          Respectfully submitted,

                                          Yashki, Sharma, & Chaubey, LLP

/s/ Sanjay Chaubey
Sanjay Chaubey, Esq.
18 E, Suite 1704
New York, New York 10017
(t) 212-878-7930
owright@foxrothschild.com
*Counsel for Plaintiff*
